## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HESHAM ISMAIL, | : | CIVIL NO.: 1:21-CV-00143 |
| | : | |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| | : | |
| v. | : | |
| | : | |
| HONEYWELL INTERNATIONAL, | : | |
| INC., *et al.*, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

### I.  Introduction.

Plaintiff Hesham Ismail ("Ismail") claims that he was subjected to racial and religious discrimination while working for the defendant, Honeywell International, Inc. ("Honeywell").  Ismail brings claims under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 against Honeywell and Judson Weiss ("Weiss"), Ismail's immediate supervisor at Honeywell.  Currently pending is Weiss and Honeywell's (collectively "the defendants") motion for summary judgment and Ismail's request for summary judgment.  For the reasons set forth below, we will grant the defendants' motion for summary judgment and deny Ismail's request for summary judgment.

## II.  Background and Procedural History.

Ismail began this action on January 21, 2021, by filing a complaint pro se against Honeywell, Weiss, and Darius Adamczyk ("Adamczyk"), Honeywell's CEO at the time (collectively, "the initial defendants"). *Doc. 1.*  After the initial defendants entered their appearance (*docs. 4, 5*), and were granted an extension of time to file a responsive pleading (*doc. 8*), the parties consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) (*doc. 10*).  The initial defendants then jointly filed a motion to dismiss (*doc. 11*), which the parties briefed (*docs. 12, 14, 15*).  We granted in part and denied in part this motion to dismiss, and gave Ismail leave to amend certain claims. *Docs. 16, 17.*  As a result, Ismail filed an amended complaint against all the initial defendants. *Doc. 18.*

Honeywell and Weiss then filed an answer to the complaint (*doc. 21*) and Adamczyk filed a motion to dismiss (*doc. 22*), which the parties briefed (*docs. 23, 24, 25*).  After considering the motion to dismiss and the applicable law, we granted Adamczyk's motion to dismiss. *Docs. 27, 28.*  Accordingly, only Ismail's claims against Weiss and Honeywell remain.

On April 28, 2023, we held a case management conference and set discovery deadlines for the parties, including a fact discovery deadline of August 28, 2023, and a dispositive motions deadline of September 25, 2023. *Doc. 31.*  On August 10, 2023, the defendants filed a motion seeking a protective order for Adamczyk.

2

*Doc. 32*.  The defendants informed the court that Ismail was seeking to depose Adamczyk which, they argued, was improper due to the apex doctrine. *Doc. 33*. Ismail filed a brief in opposition explaining that Adamczyk was no longer the CEO of Honeywell. *Doc. 35*.  The defendants then clarified that, although Adamczyk is no longer the CEO of Honeywell, he held the position of "Executive Chairman," another apex official. *Doc. 36* at 1–2.  Ismail did not seek leave to file a sur-reply brief. *See docket generally*. After considering the briefs and relevant law, and noting that Ismail sought no other discovery, we granted the motion for protective order. *Doc. 37*.  We issued an amended case management order extending all discovery deadlines 90 days (*doc. 38*) and informed Ismail that he could move for leave to depose Adamczyk if, after engaging in other forms of discovery, it appears that Adamczyk had unique knowledge relevant to Ismail's claims (*doc. 37* at 3). No further discovery disputes were brought to our attention. *See docket generally*.

After seeking (*doc. 39*) and being granted (*doc. 40*) an extension of time to file dispositive motions, the defendants filed the present motion for summary judgment (*doc. 41*).  The defendants filed a brief in support (*doc. 42*), a statement of material facts (*doc. 43*), and an appendix of record materials including depositions of Ismail, the parties' production documents, a declaration provided by Weiss, and Ismail's interrogatory responses (*doc. 44*).  On January 16, 2024, Ismail filed a brief in opposition, to which he attached three exhibits. *Doc. 45*.  In his brief

in opposition, Ismail "officially request[s] that the court issue a summary [judgment] in [his] favor[.]"[1] *Id.* at 3.  Ismail did not file a counterstatement of material facts. *See docket generally*.  The defendants then filed a reply brief. *Doc. 46*.  The motion thus has been fully briefed.

### III.  Summary Judgment Standards.

The defendants move for summary judgment under Rule 56(a) of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Through summary adjudication the court may dispose of those claims that do not present a 'genuine dispute as to any material fact' and for which a jury trial would be an empty and unnecessary formality." *Goudy-Bachman v. U.S. Dept. of*

---

[1] Ismail does not provide in his brief in opposition arguments for why we should grant his request for summary judgment. *See doc. 45*.  In their reply brief, the defendants argue that "asserts no legal basis to grant summary judgment on the claims in his Amended Complaint" and fails to "attempt to show there is no issue of material fact and he is entitled to judgment as a matter of law." *Doc. 46* at 3.

We find that Ismail's request is not only procedurally deficient, failing to abide by the federal rules of civil procedure and local rules, *see* Fed. R. Civ. P. 56; *see also* M.D. Pa. L.R. 56.1, but also substantively deficient.  As described below, we find that the defendants have demonstrated they are entitled to summary judgment on all claims.  We thus conclude deny Ismail's request.

*Health & Human Services*, 811 F. Supp. 2d 1086, 1091 (M.D. Pa. 2011) (quoting Fed. R. Civ. P. 56(a)).

The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  With respect to an issue on which the nonmoving party bears the burden of proof, the moving party may discharge that burden by "'showing'—that is, point out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must show a genuine dispute by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c).  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial, summary judgment is appropriate. *Celotex*, 477 U.S. at 322.

5

Summary judgment is also appropriate if the nonmoving party provides merely colorable, conclusory, or speculative evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). There must be more than a scintilla of evidence supporting the nonmoving party and more than metaphysical doubt as to the material facts. *Id.* at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. *Id.* at 248–49.

When "faced with a summary judgment motion, the court must view the facts 'in the light most favorable to the nonmoving party.'" *N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). At the summary judgment stage, the judge's function is not to weigh the evidence or to determine the truth of the matter; rather it is to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at

6

249.  The proper inquiry of the court "is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

Summary judgment is warranted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.  "Under such circumstances, 'there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Anderson v. Consol. Rail Corp.*, 297 F.3d 242, 247 (3d Cir. 2002) (quoting *Celotex,* 477 U.S. at 323).  "[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).

**IV.  Material Facts.**

The following facts are the material facts for purposes of the pending

summary judgment motion.[2]

On October 23, 2017, a recruiter for Honeywell, Soo Moon ("Moon"),

"contacted Ismail via email regarding a Manufacturing Engineer opening [("job

opening")] at the Pottsville, PA facility." *Doc. 43* ¶ 7 (citing *doc. 44-4* at 6–8).  On

October 30, 2017, Ismail "responded to Moon's email . . . and submitted his

resume to her for consideration" ("the 2017 application"). *Id.* ¶ 9 (citing *doc. 44-4*

at 6).  "On October 31, 2017, Moon replied [to Ismail and stated that] Ismail would

not be a good fit for the [job opening] because it required polymer experience." *Id.*

¶ 10 (citing *doc. 44-4* at 6).  Ismail replied to Moon that same day, "stating he had

polymer experience, and that he had previously worked at the Pottsville site." *Id.*

(citing *doc. 44-4* at 6).  The e-mail conversation continued with Moon asking "for

Ismail's dates of employment with Honeywell and his employee ID number, and

offer[ing] to set up a call to discuss the position further." *Id.* ¶ 11 (citing *doc. 44-4*

---

[2]  Here, in accordance with Local Rule 56.1, the defendants filed a statement
of material facts. *Doc. 43.*  Ismail, however, failed to file a counterstatement of
material facts. *See docket generally.* We thus consider the facts undisputed. *See*
M.D. Pa. L.R. 56.1 ("all material facts set forth in the statement required to be
served by the moving party will be deemed to be admitted unless controverted by
the statement required to be served by the opposing party.").  We will, therefore,
depend upon the statement of material facts.  When citing to page numbers of a
document, we use the page numbers from the CM/ECF header on the top of the
docket.

at 5). Ismail then "provided Moon a completed questionnaire[,]" but did not

answer her questions regarding his previous employment. *Id.* (citing *doc. 44-4* at

4–5).

"On or about November 14, 2017," Ismail and Moon spoke on the phone for

approximately 14 minutes "regarding the [job opening]" ("the screening call"). *Id.*

¶ 12 (citing *doc. 44-2* at 4, 24–25). Also on November 14, 2017, "Honeywell

Talent Advisor Dayna Tatham [("Tatham")] sent an email to . . . Weiss and

Gregory Kessler [("Kessler")] asking whether Ismail should be considered for [the

job opening]" ("Tatham's November 14, 2017 email"). *Id.* ¶ 15 (citing *doc. 44-3* at

3).

Tatham reached out to these two Honeywell employers in particular because

of Ismail's previous work as a contractor for Honeywell. *Cf id.* ¶ 8 ("The

Manufacturing Engineer role did not report to . . . Weiss, and was in a different

department than Weiss."). Specifically, "[b]etween 2013 and 2015, [Ismail] was

employed by CB&I[.]" *Id.* ¶ 2 (citing *doc. 44-1* at 6, 7; *doc. 44-3* at 4, 5). While

employed by CB&I, Ismail was placed at "Honeywell's Pottsville, Pennsylvania

site." *Id.* (citing *doc.44-1* at 6, 7; *doc. 44-3* at 4, 5). "Honeywell ended Ismail's

contract assignment at its facility in February 2015" ("2015 termination"). *Id.* ¶ 3

(citing *doc. 44-1* at 5. After his 2015 termination, Ismail, who is Arab, Egyptian,

and Muslim (*id.* ¶ 1 (citing *doc. 44-1* at 3)), "submitted a complaint to Honeywell

accusing . . . Weiss of race and religious discrimination in connection with" the 2015 termination. *Id.* ¶ 4 (*doc. 44-4* at 2). "Honeywell investigated [Ismail's] . . . complaint but made no findings associated with discrimination [toward Ismail] by Weiss or any other employee[.]" *Id.* ¶ 5 (*doc. 44-4* at 2).

Ismail and Weiss have not spoken since 2015. *Id.* ¶ 6 (citing *doc. 44-2* at 23). Weiss thus became aware of Ismail's 2017 application upon receipt of Tatham's November 14, 2017 email. *Id.* ¶ 16 (citing *doc. 44-5* at 2). "Weiss did not respond to Tatham's email." *Id.* ¶ 17 (citing *doc. 44-3* at 3; *doc. 44-5* at 2). Kessler, an HR Manager, however, did respond to Tatham's November 14, 2017 email. *See doc. 44-3* at 2; *44-5* at 2. "Kessler instructed Tatham not to engage with [Ismail] and that Honeywell was not interested in pursuing him as a candidate." *doc. 43* at 18 (citing *doc. 44-3* at 2).

"[Ismail] had no further contact with Moon until April 10, 2018[,] when he emailed her to follow up on the" job opening. *Id.* ¶ 13 (citing *doc. 44-2* at 17; *doc. 44-4* at 3). "Moon responded that the hiring team decided to move forward with other candidates." *Id.* (citing *doc. 44-4* at 3).

Even after the close of discovery,[3] the hiring process remains shrouded in mystery. *Id.* ¶ 21 ("Plaintiff admits he has no knowledge regarding Honeywell's

---

[3] "[Ismail] did not serve written discovery requests in this case." *Doc. 43* ¶ 29 (citing *doc. 44-2* at 16–17).

hiring process, who was involved in it, or who made the decision not to hire him.")
(citing *doc. 44-2* at 9–10, 28).  The parties agree that "Moon never spoke with or
otherwise contacted Weiss regarding" Ismail's 2017 application, despite "the fact
that she stated during the screening call that she planned to do so." *Doc. 43* ¶¶ 14
(citing *doc. 44-5* at 2), 22 (citing *doc. 44-2* at 12–13, 26–28).  Further, the evidence
shows that "Weiss did not discuss Ismail or Ismail's candidacy for the [job
opening] with Kessler, Honeywell's hiring team, or anyone else at Honeywell in
2017 or 2018." *Id.* ¶ 19 (citing *doc. 44-5* at 2–3).  In fact, "Weiss did not
participate in the decision not to hire [Ismail], and has no knowledge of why
[Ismail] was not hired." *Id.* ¶ 20 (citing *doc. 44-5* at 3).

“[Ismail] admits he has no factual evidence beyond his personal belief that
his non-hire was discriminatory or retaliatory." *Id.* ¶ 27 (citing *doc. 44-2* at 29–30).
"[Ismail] does not know what steps Moon took regarding his application or what
occurred in the application process after his screening call." *Id.* ¶ 23 (citing *doc.
44-2* at 14–15, 19–20.  "[Ismail] has no knowledge regarding the other applicants
for the" job opening, including who else applied for the job opening, who was
selected for the job opening ("successful candidate"), what qualifications the
successful candidate had, or the race or religion of the successful candidate. *Id.* ¶
25 (citing *doc. 44-2* at 21–23).  "[Ismail] admits his allegation that no other

applicant had his experience is based on an assumption, and that he has no facts to support that allegation." *Id.* ¶ 26 (citing *doc. 44-2* at 22).

"[Ismail] admits he is using his lawsuit to try [to] hold Weiss 'accountable' for events he claims occurred in 2014." *Id.* ¶ 28 (citing *doc. 44-2* at 35–36). "[Ismail] does not know, beyond his assumptions[,] what Weiss's thoughts and opinions of [Ismail] were as of 2018." *Id.* ¶ 24.  According to the defendants, Ismail also cannot establish damages.[4]

---

[4] Specifically, according to the statement of material facts, Ismail "was employed at the time he applied" for the job opening, and he "does not know whether he lost any wages as a result of his non-hire[.]" *Doc. 43* ¶¶ 30, 31.  Ismail also "does not recall whether he possesses any documents evidencing emotional distress and is not currently treating with a therapist[,]" instead Ismail "self-treats by filing lawsuits[.]" *Id.* ¶¶ 32, 33.  Further complicating matters, Ismail "testified he cannot separate out the emotional distress he attributes to his 2018 non-hire versus the events underlying his prior case against Honeywell." *Id.* ¶ 34.

In his brief in opposition, Ismail asserts, without evidence, that he "was forced to pay approximately $20K a year in rent for a new residence when [he] had to relocate for a new job, by being denied this opportunity to come back to Pottsville, there were $20K/year in damages as a result of this discrimination[.]" *Doc. 45* at 2.  And, according to Ismail, "[t]here should also be punitive and general emotional damages[.]" *Id.*

The defendants briefly argue that Ismail "cannot establish his purported damages." *Doc. 42* at 10.  Because we are able to determine the motion for summary judgment on other grounds, and because the parties deal with the damages issue only briefly, we will not further engage with the question of whether Ismail can establish damages.

## V.  Discussion.

Ismail brings claims against Honeywell and Weiss under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.  He alleges that Honeywell and Weiss discriminated and retaliated against him when they failed to hire him in 2017.

### A.  Discrimination Claims.

42 U.S.C. § 1981 allows "a plaintiff who belongs to a racial minority [to] bring a claim for purposeful race-based discrimination." *O'Haro v. Harrisburg Area Cmty. Coll.*, No. 1:18-cv-02073, 2020 WL 5819768, at *14 (M.D. Pa. Sept. 30, 2020) (citing *Brown v. Philip Morris Inc.*, 250 F.3d 789, 797 (3d Cir. 2001)). The alleged "purposeful discrimination must concern an activity identified in 42 U.S.C. § 1981(a)." *Id.* (citing *Brown*, 250 F.3d at 797)  Section 1981 provides, in pertinent part, that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens[.]" 42 U.S.C. § 1981(a).  "For purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and

the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

In other words, "[t]o establish a right to relief under § 1981, a plaintiff must show (1) that he belongs to a racial minority; (2) 'an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in § 1981[.]'" *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 569 (3d Cir. 2002) (quoting *Brown v. Philip Morris Inc.*, 250 F.3d 789, 797 (3d Cir. 2001)). "'To prevail on a claim under 42 U.S.C. § 1981, the plaintiff must present evidence of the defendant's discriminatory intent, as that section reaches only purposeful discrimination.'" *Travillion v. Harry*, NO. 3:22-cv-01196, 2024 WL 1285542, *8 (M.D. Pa. 3d Cir. Mar. 26, 2024) (quoting *Taylor v. City of St. Louis*, 702 F.2d 695, 697 (8th Cir. 1983) (per curiam)).

Title VII also prohibits discrimination. The general discrimination provision of Title VII provides that it is "an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

Both Title VII and § 1981 discrimination claims "require application of the familiar burden-shifting framework the Supreme Court articulated in *McDonnell*

14

*Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 s. Ct. 1817, 1824, 36 L.Ed.2d 668 (1973)." *Jones v. School Dist. of Philadelphia*, 198 F.3d 403, 410 (3d Cir. 1999). That burden-shifting analysis ("*McDonnell Douglas* analysis") has three stages. *Id.* "First, the plaintiff must establish a prima facie case of discrimination." *Id.* If the plaintiff establishes a prima facie case, the defendant then must "provide a legitimate, non-discriminatory reason for its actions." *Fowler v. AT&T, Inc.*, No. 20-2247, 2021 WL 5540844, at \*4 (3d Cir. Nov. 26, 2021). "If the defendant's evidence creates a genuine issue of fact, the presumption of discrimination drops from the case." *Stewart v. Rutgers, The State Univ.*, 120 F.3d 426, 432 (3d Cir. 1997). And "the plaintiff then must have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Jones*, 198 F.3d at 410. "Although the burden of production of evidence shifts back and forth, the plaintiff has the ultimate burden of persuasion at all times." *Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 193 (3d Cir. 2015).

To establish a prima facie case of discrimination, and overcome the first hurdle of the burden-shifting analysis, a plaintiff may "present[ ] direct evidence of intentional discrimination by the defendant." *Collins v. Kimberly-Clark Pennsylvania, LLC*, 247 F. Supp. 3d 571, 589 (E.D. Pa. 2017) (citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121, 105 S.Ct. 613, 83 L.Ed.2d 523

(1985)).  Alternatively, the plaintiff can establish his prima facie case with

circumstantial evidence by showing that "(1) [ ]he is a member of a protected class,

(2) [ ]he was qualified for the position . . . , (3) [ ]he suffered an adverse

employment action, and (4) the action occurred under circumstances that could

give rise to an inference of intentional discrimination." *Mandel v. M & Q

Packaging Corp.*, 706 F.3d 157, 169 (3d Cir. 2013) (quoting *Makky v. Chertoff*,

541 F.3d 205, 214 (3d Cir. 2008)) (internal quotation marks omitted).

Here, Ismail attempts to establish his prima facie case with circumstantial

evidence.  The parties do not dispute that Ismail is a member of a protected class,

he was qualified for the position, and he suffered an adverse employment action.

The defendants argue, however, that Ismail cannot present evidence showing that

the action occurred under circumstances that could give rise to an inference of

intentional discrimination ("the final element of the prima facie case for

discrimination").

To establish the final element of the prima facie case for discrimination, "a

plaintiff may either: (1) introduce evidence of comparators (i.e., similarly situated

employees who (a) were not members of the same protected class and (b) were

treated more favorably under similar circumstances); or (2) rely on circumstantial

evidence that otherwise shows a causal nexus between his membership in a

protected class and the adverse employment action." *Greene v. Virgin Islands Water & Power Authority*, 557 Fed. Appx. 189, 195 (3d Cir. 2014).

The defendants argue that Ismail fails to establish the final element of the prima facie case for discrimination by either method.  Ismail, according to the defendants, has failed to provide evidence of comparators because he has not provided evidence of "who was selected for the role, their qualifications, or whether they belong to the same protected classes as [Ismail]." *Doc. 42* at 11 (citing *doc. 43* ¶ 25).  The defendants also argue that Ismail has failed to point to evidence of "circumstances giving rise to an inference of discrimination." *Id.* at 11. Specifically, the defendants argue that Ismail bases his claims on "comments he believes Weiss made" despite "admit[ting] he does not know whether Weiss had input in the decision not to hire him, what discussions were had about his application, or what opinions Weiss had about [Ismail] at the time of [Ismail's] non-hire[.]" *Id.*  Further, the defendants argue that Ismail has no evidence that his non-hire was discriminatory aside from suspicion which, "alone, cannot defeat summary judgment." *Doc. 42* at 9 (collecting cases).

Ismail counterargues that his "belief in discrimination is indeed supported by" evidence that his termination in 2015 was motivated by discrimination. *Doc. 45* at 1.  Ismail further argues that Weiss's failure to reply to Tatham's November 14, 2017 email was tacit consent to Kessler's response because Weiss "did not

object to being represented by [Kessler] or object to [Ismail's] application being rejected on his behalf[.]" *Id.* at 2.

Ismail makes statements that are contradictory to the statement of material facts, depending upon attachments to his brief in opposition for support.[5] Specifically, Ismail suggests that his "belief of discrimination is indeed supported by the attached email (Exhibit 1) which documents [Weiss's] acts of racial/religious discrimination which include an actual AUDIO RECORDING of his racist language that he used to justify my termination in the absence of any work[-]based reason." *Doc. 45* at 1.  Ismail thus refers to an email which he sent to a number of Honeywell employees on January 20, 2016. *Doc. 45-1*.  This email refers to an audio recording—which was not submitted to this court—of his termination. *Id.*  But, as discussed above, Ismail did not file a counterstatement of material facts and, as such, the statement of material facts must be considered undisputed. *See* M.D. Pa. L.R. 56.1 ("all material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless

---

[5] Ismail claims that Kessler "was the same HR manager who was involved in my original termination in 2015 in implementing [Weiss's] discrimination." *Doc. 45* at 2.  This assertion is not included in the statement of material facts, and, accordingly, we will not consider it. *See* M.D. Pa. L.R. 56.1; *see also doc. 43*.  If we were to consider this assertion regarding Kessler, however, it would not change our analysis.  Ismail does not allege that Kessler held discriminatory animus toward him, only that Kessler "implement[ed]" Weiss's decisions, which Ismail believes were discriminatory. *Doc. 45* at 2.

controverted by the statement required to be served by the opposing party.").  Even
if we were to consider this procedurally deficient evidence, the email purports only
to contain evidence of discrimination in Ismail's 2015 termination.  *See id.*  Such
does not evidence discrimination in the decision not to hire him in 2018 unless
there is also evidence connecting the alleged discrimination in 2015 to the events at
issue here, the decision not to hire him in 2018.

Ismail tries to make such a connection by asserting, contrary to the material
statement of facts, that "Weiss was consulted during the hiring process." *Doc. 45* at
1.  For support of this assertion, Ismail points to emails also submitted by the
defendants with the statement of material facts. *Compare docs. 45-2, 45-3 with
docs. 44-3* at 2–3, *44-4* at 3–8.[6]  Specifically, Ismail cites his email to Moon
following the screening call, in which Ismail wrote, "As you said today, after you
reach out to . . . Weiss and Honeywell HR to confirm my work experience and get
my Employee ID#, I look forward to hearing from you about scheduling the
interview." *Doc. 45-2* at 3.  Ismail also cites the email chain that begins with
Tatham's November 14, 2017 email to Kessler and Weiss. *Doc. 42-3*.  Although
the email was to both Kessler and Weiss, it is undisputed that Kessler was the only

---

[6] Ismail's version of the emails between Tatham and Kessler contains four
additional emails compared to the version submitted by the defendants. *Compare
doc. 45-3 to doc. 44-3*.  This one additional page in Ismail's submission does not
change our analysis.

person who responded and there has been no evidence submitted that Kessler discussed his response with Weiss. And even if we were to adopt Ismail's interpretation that Kessler's position was somehow adopted by Weiss simply because he "did not object" does not give rise to an inference of intentional discrimination on the part of those individuals who actually made the decision not to hire him.

It is thus clear that Ismail has not met his burden to establish the final element of the prima facie case of discrimination. Ismail offers no evidence regarding who was offered the job in his stead, that person's race or religion or qualifications. And nothing Ismail points to as evidence connects the discriminatory beliefs he claims Weiss holds to the decision not to hire him. We, therefore, cannot find "a causal nexus between his membership in a protected class and the adverse employment action." *See Greene*, 557 Fed. Appx. at 195. And because Ismail has failed to establish the final element of the prima facie case of discrimination, we will grant the defendants' motion for summary judgment as to the discrimination claims.

## B. Retaliation Claims.

The *McDonnell Douglas* burden shifting analysis also applies to retaliation claims brought under Title VII such that, "[a]fter establishing a prima facie case of

retaliation, the burden shifts to the employer to provide a legitimate non-retaliatory reason for its conduct" and, "[i]f it does so, the burden shifts back to the plaintiff" to show that such non-retaliatory reason was pretextual. *Carvalho-Grevious v. Delaware State University*, 851 F.3d 249, 257 (3d Cir. 2017). "The onus is on the plaintiff to establish causation at two stages of the case: initially, to demonstrate a causal connection as part of the prima facie case, and at the final stage of the *McDonnell Douglas* framework to satisfy her ultimate burden of persuasion by proving pretext." *Id.*

Likewise, § 1981 also encompasses retaliation claims. *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 446 (2008). To succeed on a § 1981 claim the plaintiff must also begin by showing a prima facie case of retaliation before "the burden of production shifts to the employer to articulate a legitimate, non-retaliatory reason for the adverse action." *Solomon v. Philadelphia Newspapers, Inc.*, No. 08-2839, 2009 WL 215340, *2 (3d Cir. 2009). And "[i]f the employer meets this burden, the burden of production shifts back to the employee to show, by a preponderance, that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse action." *Id.* (internal quotations omitted).

Thus, with regard to both Title VII and § 1981 retaliation claims, Ismail must first show a prima facie case of retaliation. "To state a prima facie case of retaliation, a plaintiff must show that (1) [ ]he engaged in a protected activity, (2)

[ ]he suffered an adverse employment action, and (3) there was a causal connection between the participation in the protected activity and the adverse action." *Carvalho-Grevious*, 851 F.3d 249, 257 (citing *Moore v. City of Philadelphia*, 461 F.3d 331, 340–41 (3d Cir. 2006)) (regarding Title VII claims); *see also Solomon*, 2009 WL 215340 at * 2 (citing *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007)) ("To show a prima facie case of retaliation, [the plaintiff] was required to show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the protected activity and the adverse action.") (regarding § 1981 claims).  Here, the parties dispute whether Ismail can prove the requisite causal connection between the fact that he reported alleged discrimination in his 2015 termination and the defendants' failure to hire him in 2017.

The defendants argue that Ismail's "claims fail because Weiss played no role in his non-hire." *Doc. 42* at 12.  Because the "evidence establishes Weiss had no involvement in Honeywell's decision not to interview or hire [Ismail,]" the defendants reason, Ismail cannot show a prima facie case of discrimination. *Id.* at 13.  Further, the defendants argue, Ismail fails to "establish the existence of an underlying Section 1981 violation[.]"[7] *Id.* at 13.  In sum, the defendants argue that

---

[7] It is true that "[i]n a retaliation case a plaintiff must demonstrate that there had been an underlying section 1981 violation." *Estate of Oliva ex rel. McHugh v. New Jersey*, 604 F.3d 788, 798 (3d Cir. 2010).  But the defendants argue that

Ismail "has no evidence beyond his own conclusory assumptions to indicate a causal link between his 2015 complaint and 2018 non-hire." *Id.*

Ismail's response is notably brief and does not separately address the defendants' arguments regarding his discrimination claims and retaliation claims. *Doc. 45*. Instead, as discussed above, Ismail argues that Weiss was involved in his non-hire. *Id.*

Again, even if we were to adopt Ismail's interpretation of the email exchange between Kessler and Tatham—namely that Weiss adopted Kessler's opinion that Ismail should not be interviewed—we do not arrive at an inference of retaliation on the part of those individuals who *actually decided* not to hire Ismail. It is clear from the evidence that Kessler did respond to Tatham's November 14, 2017 email and instructed Tatham and Moon that Honeywell was not interested in pursuing Ismail as a candidate. *Doc. 44-3* at 2. Ismail argues that Kessler was aware of his 2015 termination, relying upon assertions neither contained in the

---

Ismail fails to meet this standard "for the reasons stated . . . above." *Doc. 42* at 13. It seems they are depending on their arguments regarding Ismail's present discrimination claims for failure to hire. But Ismail is not alleging that the defendants retaliated against him because he reported their discrimination in failing to hire him; he is alleging that the defendants are retaliating against him because he reported their discrimination in terminating him in 2015. We do not have before us argument dealing with this underlying alleged violation of § 1981. And we conclude, as discussed below, that Ismail fails to meet the causation element of a prima facie case for retaliation. Accordingly, we need not and do not further address the defendants' argument regarding the alleged lack of an underlying § 1981 violation.

statement of material facts nor supported by any evidence presented to the court. *Doc. 45* at 2 ("[Kessler] was the same HR manager who was involved in my original termination in 2015 in implementing [Weiss's] discrimination."). But even if we were to consider these assertions about Kessler's knowledge, Ismail fails to provide evidence that Kessler was aware of Ismail's *protected activity* in reporting the alleged discrimination.

To state a prima facie case of retaliation, Ismail must show that "(1) [ ]he engaged in a protected activity, (2) [ ]he suffered an adverse employment action, and (3) there was a causal connection between the participation in the protected activity and the adverse action." *Carvalho-Grevious*, 851 F.3d 249, 257 (citing *Moore v. City of Philadelphia*, 461 F.3d 331, 340–41 (3d Cir. 2006)) (regarding Title VII claims); *see also Solomon*, 2009 WL 215340 at * 2 (citing *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007)) (regarding § 1981 claims). Ismail has not demonstrated a causal connection between his reports regarding discrimination in his 2015 termination and Honeywell's decision not to hire him. He has not shown that anyone who made the decision not to hire him even knew about his reports regarding his 2015 termination, much less that those reports caused their decision. Ismail has, therefore, failed to state a prima facie case of retaliation.

24

**VI.  Conclusion.**

Based on the foregoing, we will grant the defendants' motion for summary judgment (*doc. 41*).  Further, because we grant the defendants' motion for summary judgment, we will deny Ismail's request for summary judgment in his favor.  An appropriate order follows.

_**S/Susan E. Schwab**_
Susan E. Schwab
United States Magistrate Judge